The next case is United States v. McDowell. Good afternoon, Your Honors. May it please the Court. My name is Tim Murphy, and I represent Mr. McDowell, the appellant in this matter. The District Court's ruling on the drug premises enhancement could potentially result in every defendant that's convicted of selling drugs who also has a residence being subjected to this enhancement. My client was a guest in his mother's home for approximately a month prior to the arrest in this matter. As the Court knows, there were no drug transactions that were conducted on the premises. The only money and the drugs that were found in the premises were found within his discarded clothing, which was left around the residence. This was consistent with the transient nature of his drug activity, which, as this Court knows, had to do with him going to a parking lot on Bailey Avenue in Buffalo where he worked at a Kentucky Fried Chicken, and he sold drugs out of the car there. Aside from a vague reference in the probation report, paragraph 15, to packaging materials being present, there were no other tools of the trade, as you've heard in the case law, no police scanners or surveillance or firearms, that sort of thing. Can I just ask you? Yes, Your Honor. I think you said this, what you said now is in your brief as well. Is there no further detail in the record about what these packaging materials were or where they were located?  I believe it's silent, Judge. As far as what's inside the residence, and I would direct the Court to paragraph 15 of the probation report, which was adopted by the sentencing court. I think you'll find that in Appendix 119 and 120. And as for the money and the drugs, I recall that the drugs were in Gene's pocket and the money was in a pair of shorts. Anything additional to that? No, Your Honor. And what I wanted to also point out while we're on the topic of the factual basis, the Court finds that this is all happening in his room, if you will. What was actually in his room, there's two rooms involved here. And this is also in paragraph 15 of the probation report. The lower room is considered to be his bedroom. There's an upper bedroom as well. The lower bedroom is, in fact, where the funds are, the money is, inside his shorts. The upper bedroom, which is not his bedroom, actually has the grams of the drugs. Just to clarify that. Would it be different if the money and the drugs were in the corner of the room as opposed to the clothes? I mean, it sounds like the inference there is that it was transient or something and not a hiding place. Is that right? Yes, Your Honor. The picture that district court paints here is that he has control of this one room where everything is. And our point in bringing this up just now and in the brief is that he actually is throwing these clothes all over the place. And it goes to the question really of control, which I can jump into right now. As the Court knows, when we're discussing what it means to maintain, there's two components. There's the possessory interest that we do not dispute. He lived there. But if you look at the application note and its subsection B, it requires district courts to ask the question, what exactly did they do, did the defendant control? Did you control access? Did you control activities? And just to give a couple of examples for the Court, the Miller case, you have the husband and wife selling meth out of their home, but they're actually using the premises to actually extradite the process. They're telling people that are coming to buy, it's on the porch or it's in the barbecue pit. They're actually using the premises and showing that they control the activities. The Flores Oleg case from the Seventh Circuit, he was a domineering figure inside his house. He controlled activities where people went. There's nothing like that in our case. All we have is that he lived there. There's no question he lived there. And that's why he left his clothes around as he did. I would look at it this way, Your Honors. A college kid comes home. He stays with his parents for a month. He leaves his clothes around. If he were to leave the house, commit a crime and come back, how does that transform the residence into a maintained drug premises? If — I'm sorry. Yes, Your Honor. If we were to just assume a set of facts, as you're assuming, that, yeah, he lived in his mother's house, but that was his stash house. And he used the bedroom as a stash house. Just accept that for the sake of argument. Would that not — would that set of facts not be illustrated if, for example, the police had observed that the drug dealer was always seen coming and going every time he was going off to a drug deal, coming and going from the stash house? Wouldn't that be consistent with that? Let me distinguish it on our facts, if I may, Your Honor. There were approximately 100 — and I want to get to your question, but there were approximately 100 transactions in the total relevant time period here. Opposing counsel argues in their brief that my client left the residence to go do drug deals there and back. That happened one time. There were two other occasions where he actually leaves the residence to go to do drug deals. There were six months of the relevant conduct period that occurred before he moved in with his mother. What I am asking the Court to do is compare these two periods. What changed? What changed when he moved in with his mother? He did the drug deals exactly the same way. This goes to the Murphy's — But doesn't that just suggest that he moved his stash? I mean, it was a small stash, small stash location. But, I mean, just — if someone maintains a stash house for two years and then they get evicted, and then you arrest them a month later, that doesn't suggest that in that intervening month he couldn't have reestablished a new stash location, does it? Except that we know here that the relevant conduct before — and my time is running out. May I finish this, Your Honor? We know that the relevant conduct that occurred before he moved in with his mother was the same M.O. He was going to that parking lot and selling from the parking lot, or he was going to one of the buyer's homes. There was never a point where he used his own home. I think in your question, Judge, yes, that would be using the premises for furtherance of distribution. But there's nothing to support that at all in our record. Thank you, Your Honor. Ms. Gould. Good afternoon. May it please the Court. Catherine Gregory, assistant U.S. Attorney representing the government in this matter. Your Honors, there's one issue in this case, and that's whether the district court's factual finding that the appellant maintained premises for the purpose of distributing fentanyl was clearly erroneous, and it was not. If we just take a look at some of the factors that other courts have identified and that are mentioned by the guidelines commentary, first, was he storing fentanyl in the house? Yes, he was. Law enforcement recovered 4 grams approximately of fentanyl from the house, which according to the PSR, I believe is the equivalent of 10 to 13 transactions worth of fentanyl going forward. Did he store proceeds from the fentanyl sales in the house? Yes, he did. Law enforcement recovered $3,000 in cash that was attributable to his drug dealing. Did he store tools of the trade in the house? Yes. Packaging materials, and to Your Honors' question, I've also searched the record. I don't believe there's anything more specific than just packaging materials, but it wasn't disputed that they were packaging materials in the house. Did he maintain the house? Another factual question. Now, the Verners Court and the Tenth Circuit held that living in the residence is typically sufficient to show that someone was maintaining a house or maintaining a premises. And yes, he admitted to living there. He was observed coming and going freely at will. He was observed with or his possessions were in the house, his clothing, his mail. He certainly felt comfortable enough to leave 10 to 13 transactions worth of fentanyl laying around, as well as ---- Would agreeing with the district court here mean essentially that anyone who deals drugs essentially maintains a drug premises if he ever keeps possession of any of the drugs or the money? Meaning that you have to keep things someplace, even if on a transient basis, and you could put it in a ---- you could rent a place, but then that would be a drug premises. You could bring it home with you. That would be a drug premises. It seems a fairly broad conception of premises on these facts and different from a lot of the published opinions that I've reviewed, which do seem to involve storage of taking place at the premises or co-conspirators visiting the premises, none of which we have here. This is the homeless drug dealer argument that the appellant has made, and absolutely not, Your Honor. This is a totality-of-the-circumstances, fact-specific inquiry by nature. And now, is this the worst iteration that we could possibly see of this enhancement? Absolutely not. This is not Pablo Escobar. But are these factual findings clearly erroneous?  And I can ---- I think we ---- there's no question that drug dealers are a creative bunch when it comes to hiding their stash, and there are certainly some Rube Goldberg type setups out there. But this would not encompass, for example, the drug dealer dealing on the corner where ---- who's hiding his stash in a Coke can or in a wheel well or ---- Can I ask about the legal standard? You keep saying clearly erroneous. And as I understand it, it's not the facts that are in dispute, but the application of them to determine whether one of the primary purposes of the premises was to manufacture or distribute. Isn't that a de novo legal issue or facts, application of the facts to the law issue? Well, the intentions ---- no, Your Honor. The intentions of the appellant and what he was using of primary purpose, that's a factual finding. So the de novo interpretation would come if the district court had made some kind of erroneous interpretation or misapplied it. Here, as I read the appellant's arguments, he keeps going back to sufficiency of the evidence. And that appears to be a factual dispute. And if we look at Batista, which this Court decided in 2012, reviewing the application of Guideline 2D1.1b1, which is a different enhancement, this Court used clear error there, I believe. With respect to this specific enhancement, the Fifth, Eighth, and Eleventh Circuits, the exact cases are cited on page 7 of our brief, have also used clear error because they see this as a factual determination. And when the appellant is arguing that there aren't the facts there that are sufficient to support it, we're looking at whether the district court was able to find by preponderance of the evidence that all of these addition were there, that he was maintaining the premises, and then why was he doing that? That's a factual question for the purpose of distributing this controlled substance. Getting back to Judge Livingston's question about whether this would encompass everyone, as I was saying, this would not encompass the dealer on the street. This would not encompass the courier. This would not encompass someone who is maintaining their or who is keeping their stash at a place where they don't maintain the premises, knowingly maintain the premises. So without giving tips to future criminals, there are certainly a number of situations where this enhancement would not apply. But as the Third Circuit has noted, this is supposed to be a flexible standard. And it's not whether yes. What other circuit decision might we look at that has facts most analogous to those here? Well, Your Honor, there's on pages, I believe, 10 to 12 of the brief, we go through a number of cases. I haven't been able to find an exact replica of these specific sets of circumstances, but that's because it is such a fact-specific inquiry. This Court has held that totality of the circumstances is not divide and conquer. It's let's look at this holistically. And as I said, this is not the worst possible iteration of facts that you would see where this enhancement could apply. But it's not whether reasonable minds could disagree. This Court held in Compton that innocent interpretations are insufficient to overcome clear error, to show clear error. The question is whether the district court was clearly erroneous in these factual findings. There wasn't the appellant's brief doesn't really identify how the district court may have misinterpreted the guideline or misinterpreted the enhancement. It's a very straightforward enhancement, all things considered. Looking at this holistically, this is a fentanyl dealer who was observed coming and going freely from this house, felt comfortable leaving thousands of dollars and multiple transactions worth of fentanyl in the house, admitted that he lived there below, did not dispute before the district court that he had a possessory interest and exerted control over the space, and at the height of the opioid crisis was traveling to and from these undercover purchases from the house, and on more than one occasion going directly from the house to the buy and back to the house. And I would submit to the Court that's because that's where he felt comfortable stashing his fentanyl. One of the primary purposes of the premises has to be manufacturer distribution. And the factors here just seem like it feels like he's using this as a crash pad. He's at his mom's place throwing his clothes around, doesn't even bother to take the drugs and money out of his pockets. It certainly does suggest that it's a transient sort of place he's staying as opposed to having a primary purpose there. It seems more like on the incidental side than the primary purpose side. Well, primary purpose, excuse me. The Tenth Circuit in Verner's described the primary purpose, and this is described in the U.S. Sentencing Guidelines Note 17 as well, that primary purpose can be shown by the possessory interest and the control that's asserted over the space. So it's not, that doesn't just go to the maintenance. That also goes to what the primary purpose is. And primary means, doesn't mean the only use. Obviously, if it were 100 percent of the time, then that would exclude anyone who lives with other relatives or that would narrow the enhancement too much. It would go so far as to say that anyone who lives in a house and also stores their drugs there and uses it as their home base can't be encompassed by this enhancement, which is certainly not what Congress intended when they drafted the statute, when they drafted the guideline. Here, we don't just have the indicia. I see my time's expired. May I finish? We don't just have the indicia of tools of the trade, drugs, cash. We have the observation and the admission, of course, that he lives there for an extended period. We have the observations that on multiple undercover purchases, he's going straight from the house to the buy and then back to the house. Just because he was conducting drug business elsewhere as well does not mean that he wasn't using this as what the district court found it to be, his home base. And I would just note that, you know, you certainly shouldn't be able to avoid this enhancement just because you can set up a stash house on short notice. So the fact that he may have been living there for a short period relative, it goes, I think, upon, it says a month and a half or a month. It's actually unclear in the record. But the fact that he was living there for about a month and a half shouldn't allow him to evade the application of this enhancement. Therefore, we'd ask that this Court affirm the sentence. Thank you. Your Honors, before I forget, I started to mention the Murphy decision before. The Verners was a pre-enhancement case from 1995, an instructive case in many ways. But the Tenth Circuit has spoken in Murphy. And what I'm going to ask the Court to do is adopt an analogous standard to what they did in Murphy. The Court there, in determining whether there was frequency in a substantial amount of drug activity, looked at four factors. I won't go through them all, but just to focus in on the fourth one, which is the question, is it substantial? Is it actually substantial, the use of this property for this drug activity? The Sixth, the Seventh, the Eighth Circuits all say analogous things. Is it substantial? Is it significant? Do we need this property? And this Court has the opportunity here to look at this conduct before and after he moves in here. What we heard from opposing counsel is true. He lived there. We're not denying that. But that comes back to our first point. Unless you don't have a home, how is this not going to apply to you? And I respectfully do have to correct that other allegation. Only one time did he leave the residence and then come back to the residence after a drug deal. And it was about 2% or 3% of all the relevant conduct period that the Court has before it. Unless there's any other questions, I thank you. Thank you both, and we will take the matter under advisement. That's the last case to be argued on the calendar today, so I'll ask the Clerk to adjourn Court. Court is adjourned.